APPEAL NO. 23-4590

In the

# United States Court of Appeals
## For the Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff - Appellee,*

v.

**DARRIN ALONZO MILLER,**

*Defendant - Appellant.*

## BRIEF OF APPELLANT DARRIN ALONZO MILLER

Wesley P. Page
Federal Public Defender

Jonathan D. Byrne
Appellate Counsel

U. S. Courthouse, Room 3400
300 Virginia Street East
Charleston, West Virginia  25301
Telephone: (304) 347-3350

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

STATEMENT OF JURISDICTION ..................................................................... 1

ISSUE FOR REVIEW ............................................................................................ 1

STATEMENT OF CASE ........................................................................................ 1

SUMMARY OF ARGUMENT .............................................................................. 5

ARGUMENT ............................................................................................................ 6

    The letter Miller sent to M.M. was not obscene and cannot
    support a conviction for attempted distribution of obscene
    material to someone under 16 years of age........................................................ 6

    A.    Standard of Review. ................................................................................ 6

    B.    This appeal turns on whether the letter Miller sent to
           M.M. was obscene. .................................................................................. 7

    C.    The plain language of the letter, taken as a whole,
           does not constitute obscenity................................................................. 8

    D.    The collateral aspects of the letter – who wrote it and
           to whom it was written – do not make it obscene. ........................... 12

CONCLUSION ..................................................................................................... 14

REQUEST FOR ORAL ARGUMENT................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Ginsberg v. State of New York*, 390 U.S. 629 (1968) .................................................................. 13

*Jacobellis v. State of Ohio*, 378 U.S. 184 (1964) ........................................................................ 6

*Krause v. United States*, 29 F.2d 248 (4th Cir. 1928) ................................................................. 7

*Miller v. California*, 413 U.S. 15 (1973) ........................................................................ 7, 8, 9, 11

*Powell's Books v. Kroger*, 622 F.3d 1202 (9th Cir. 2010) ............................................................ 9

*Roth v. United States*, 354 U.S. 476 (1958) ................................................................................. 8

*Sales v. United States*, 258 F. 597 (8th Cir. 1919) ....................................................................... 7

*United States v. Gugliemi*, 819 F.2d 451 (4th Cir. 1987) ............................................................. 9

*United States v. Miller*, 61 F.4th 426 (4th Cir. 2023) ........................................................ 2, 13, 14

*United States v. Miller*, Appeal No. 22-4397 ............................................................................. 14

*United States v. Poole*, 640 F.3d 114 (4th Cir. 2011) .................................................................. 6

*United States v. Pryba*, 900 F.2d 748 (4th Cir. 1990) .................................................................. 8

*United States v. Ragsdale*, 426 F.3d 765 (5th Cir. 2005) .......................................................... 6, 7

*United States v. Stevens*, 559 U.S. 460 (2010) .......................................................................... 13

## Constitutional Provisions

U.S. Const. amend. I .................................................................................................................. 13

## Federal Statutes

18 U.S.C. § 1461 ........................................................................................................................ 12

18 U.S.C. § 1470 ............................................................................... 1, 7, 12, 13, 14

18 U.S.C. § 2246(2) ................................................................................................ 12

18 U.S.C. § 3231 ....................................................................................................... 1

18 U.S.C. § 3742 ....................................................................................................... 1

28 U.S.C. § 1291 ....................................................................................................... 1

## Rules

Fed. R. App. P. 34(a) ............................................................................................. 14

Fed. R. Evid. 403 ................................................................................................... 14

## Other Authorities and Sources

Cardi B (with Megan Thee Stallion), *WAP* (Atlantic Records 2020)
Lyrics available at https://www.azlyrics.com/lyrics/cardi-b/wap.html
(last visited December 14, 2023) ......................................................................... 10

Gary Trust, *Cardi B & Megan Thee Stallion's 'WAP' Debuts at No. 1 on
Billboard Hot 100 With Record First-Week Streams*, Billboard, August 17, 2020,
https://www.billboard.com/pro/cardi-bs-wap-debuts-no-1-hot-100/ ................. 10

Keith Caulfield, *Lil Baby's 'My Turn' Is MRC Data's Top Album of 2020,
Roddy Ricch's 'The Box' Most-Streamed Song*, Billboard, January 7, 2021,
https://www.billboard.com/pro/mrc-data-2020-recap/ ....................................... 11

*Literary Review's Bad Sex in Fiction Award*, Literary Review,
https://literaryreview.co.uk/bad-sex-in-fiction-award ............................................. 9

Mark Savage, *The best albums and songs of 2020: Fiona Apple,
Cardi B, Bob Dylan and Dua Lipa*, BBC, December 21, 2020,
https://www.bbc.com/news/entertainment-arts-55336503 .................................. 11

Trevor Anderson, *Adele's 'Easy on Me' Joins Elite List of Biggest Hot 100 No. 1s of Last 30 Years*, Billboard, October 27, 2021, https://www.billboard.com/pro/olivia-rodrigo-drivers-license-dominant-hot-100-number-1-hits/ .................................................................................................... 11

# STATEMENT OF JURISDICTION

On December 14, 2021, an indictment was filed in the Southern District of West Virginia charging Darrin Alonzo Miller with using the mail to attempt to transfer obscene material to a person under 16 years old, in violation of 18 U.S.C. § 1470. JA011. Because that charge constitutes an offense against the United States, the district court had original jurisdiction pursuant to 18 U.S.C. § 3231. This is an appeal from the final judgment and sentence imposed after Miller was convicted at trial of the charge in the indictment. JA082. A judgment order was entered on September 7, 2023. JA092-100. Miller timely filed a notice of appeal on September 20, 2023. JA101. The United States Court of Appeals for the Fourth Circuit has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

# ISSUE FOR REVIEW

Whether the letter sent by Miller to M.M. on June, 2020, was obscene, such as to support a conviction for mailing obscene material to a minor under 18 U.S.C. § 1470.

# STATEMENT OF CASE

In June 2020, Corporal Jennifer Demeyer, an officer from the West Virginia State Police specializing in Internet crimes against children, was alerted by someone at the Parkersburg (West Virginia) Correctional Facility of a letter written by an inmate, Miller, to a 14-year-old, M.M., that was of a sexual nature. JA027-028.

1

Demeyer interviewed Miller, who admitted writing the letter, that he knew M.M. was 14 years old, and that M.M. was his adopted sister. JA032. As a result, Miller was charged with attempting to transfer obscenity to a person under 16 years of age. JA011.

Prior to trial, Miller offered to stipulate to every element of the charged offense at trial, aside from the issue of whether the letter itself was obscene. The Government agreed to most stipulations, but "indicated that it intended to call a police officer to testify as to *how* Miller knew" M.M. was 14 years old. *United States v. Miller*, 61 F.4th 426, 430 (4th Cir. 2023). Miller filed a motion *in limine* to preclude the introduction of such testimony, which the district court granted. *Id.* The Government took an interlocutory appeal of that order and this Court reversed. *Id.* at 428-429. In addition to concluding that such testimony was relevant to the issue of how Miller knew M.M.'s age, this Court concluded that it "could assist the jury in determining whether the material is obscene." *Id.* at 431. This Court also concluded that the testimony would not be unduly prejudicial. *Id.* at 432-433.

Upon remand from this Court, trial was held on June 13, 2023. JA012. The only witness to testify was Demeyer. In addition, the jury heard stipulations that (1) on June 22, 2020, Miller was incarcerated at the Parkersburg Correctional Center, and that (2) Government Exhibit 1 was a letter drafted by Miller sent via the United States mail to M.M., who was 14 years old at the time. JA033-034. The

Government also introduced the letter in question, Government Exhibit 1A, which was read for the jury in full by Demeyer. JA030-032; JA087-088.

In closing argument, the Government noted that, in light of the stipulations, "what remains is whether the letter meets the definition of obscene." JA048. The Government argued that because the letter was "sent from one person to another" with "no intention of ever being publicly distributed, published" there was "no legitimate claim that the community, as a whole, would find that this has serious literary value." JA049. The Government also stressed that the applicable standard was what the average person would find patently offensive while "looking at what the community accepts as being within the limits of candor." *Ibid.* The letter alone, the Government argued, "describes in graphic detail sexual activity between a 38-year-old man and 14-year-old girl" which "alone . . . is shameful" and "not accepted." JA051. That M.M. was Miller's sister "is what makes this even more shameful and disgusting." *Ibid.* As for the words themselves, the Government argued that "the words he uses to describe sex are patently offensive" and "it's clear to . . . the average person in the community that those are offensive terms." JA052. The letter uses such language "over and over" and, "combined with the fact that it appeals to shameful incestuous sex, the fact that it has no literary value, that is what pushes it to meet the standard for being obscene." JA055.

3

Miller argued that the test for obscenity was not what "Miller thought when he wrote the letter" or "what M.M. would find offensive" and that the "fact that this letter was sent to a minor doesn't transform it . . . from not obscene to obscene." JA056. He added that "the simple fact that he sent it to his adopted sister, does not in and of itself make it obscene." *Ibid.* Miller emphasized that there were portions of the letter that discussed "wanting kissing and cuddling and the sleeping next to her at night," none of which were obscene. JA057. Miller realized "he wasn't going to have any kind of relationship with M.M." and was "searching for some degree of intimacy and he was looking for it in the wrong place." *Ibid.* Miller also argued, with regard to his familial relationship to M.M., that while the jury could consider that in determining whether the letter appealed to the prurient interest, "you can only consider the four corners of that letter to see if he describes sexual conduct in a patently offensive way." JA058. The letter itself "describes ordinary, normal, healthy sexual behavior between two people that might be in a relationship." *Ibid.* As to the words themselves, Miller argued that he was "using the words that he knows to describe what he wants to do." JA059. As for community standards, Miller argued the jury should consider that it was "the age of sexting and Snapchat" and other apps that allow people to "connect with people who share your own same sexual fetishes." *Ibid.* "That's what's accepted." JA060.

The jury found Miller guilty. JA082. He was sentenced to 37 months in prison, to be served concurrently with his incomplete state sentence, to be followed by a three-year term of supervised release. JA093-094

## SUMMARY OF ARGUMENT

The only element ever disputed by Miller in this case is whether the letter he sent to M.M., a minor who is also his sister, was obscene. In spite of the jury's verdict convicting Miller of distributing obscene material to a minor, this Court is under an independent obligation to determine whether the letter at issue is obscene. Focusing on the letter as a whole, on its language itself, does not support a conclusion that the letter is obscene. That language, while discussing sexual activities in explicit and frank ways, does not appeal to the prurient interest according to current community standards. Nor does it portray sexual acts in a patently offensive way. The collateral facts that M.M. was a minor and Miller's sister, while relevant to other elements of the charged offense, cannot transform non-obscene speech into obscenity. Whether the letter is obscene in and of itself is a requirement to sustain a conviction for then mailing that obscenity to a minor. Applying the test for determining obscenity prescribed by the Supreme Court should lead this Court to the conclusion that Miller's letter was not obscene. Therefore, this Court should vacate Miller's conviction.

5

# ARGUMENT

**The letter Miller sent to M.M. was not obscene and cannot support a conviction for attempted distribution of obscene material to someone under 16 years of age.**

## A. Standard of Review

Typically, when reviewing the basis for a conviction, "an appellate court must affirm the district court's judgment if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Poole*, 640 F.3d 114, 121 (4th Cir. 2011)(cleaned up). However, when the fundamental question underlying the prosecution is whether particular material is obscene or not, this Court has an obligation to independently determine if that material is actually obscene, as "it is only 'obscenity' that is excluded from the constitutional protection" and therefore "the question whether a particular work is obscene necessarily implicates an issue of constitutional law." *Jacobellis v. State of Ohio*, 378 U.S. 184, 188 (1964)(explicitly rejecting argument that whether a particular work is obscene "can be treated as a purely factual judgment on which a jury's verdict is all but conclusive"); *see also United States v. Ragsdale*, 426 F.3d 765, 779 (5th Cir. 2005)(noting that "[d]espite our conclusion that: there was sufficient evidence to support the jury's finding that the tapes are obscene . . . we are still required to make an independent constitutional judgment as to the obscenity of the materials in

question"). That duty extends to all three prongs of the *Miller* test. *Ragsdale*, 426 F.3d at 780.

> **B.  This appeal turns on whether the letter Miller sent to M.M. was obscene.**

There are no facts in dispute in this appeal, nor have there ever been in this case. There is no dispute that Miller wrote the letter introduced at trial as Government Exhibit 1A. JA087. There is no dispute that he attempted to mail that letter to M.M. There is no dispute that at the time M.M. was under the age of 16 and Miller was aware of that fact when he attempted to mail the letter to her. If that letter is obscene then Miller is guilty of violating 18 U.S.C. § 1470. If it is not, then he is not guilty.

Taken as a whole, the letter at issue in this case does not rise to the level of obscenity as defined by the Supreme Court. While the language the letter uses is explicit and frank in describing sexual activities between the sender and recipient it is not language that falls outside the broad category of speech about sex that is accepted in modern society. Because the language of the letter itself is not obscene,[1]

---

[1] *See Sales v. United States*, 258 F. 597, 598 (8th Cir. 1919)(the "evil character of the letter or publication declared nonmailable by the clause of the statute under consideration must be reasonably apparent or discernible on its face"); *Krause v. United States*, 29 F.2d 248 (4th Cir. 1928)(reversing conviction for sending obscene letter through the mail where words of the letter itself were not obscene).

7

the collateral facts that it was sent to a minor who was also the writer's sister does not make it so.

### C. The plain language of the letter, taken as a whole, does not constitute obscenity.

The Supreme Court has prescribed a three-part test to determine if a particular material is obscene. It must be determined whether (1) "the average person applying contemporary community standards would find that the work, taken as a whole, appealed to prurient interests"; (2) "the work depicts or describes in a patently offensive way, sexual conduct specifically defined" by applicable law;[2] and (3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *United States v. Pryba*, 900 F.2d 748, 759 (4th Cir. 1990), citing *Miller v. California*, 413 U.S. 15 (1973). Miller concedes that, as the material at issue here is a private letter, the third prong of the *Miller* test is largely immaterial.[3] Applying the other two prongs to Miller's letter, however, shows that it does not meet the exacting definition of "obscenity" crafted by the Supreme Court.

A "prurient interest" is one that is "a shameful or morbid interest in nudity, sex, or excretion." *Roth v. United States*, 354 U.S. 476, 487, n.20 (1958). As this Court

---

[2] While *Miller* dealt with a state regulation, the standard also applies to federal law. *Pryba*, 900 F.2d at 759.
[3] Regardless, this Court should not lightly conclude that a private letter is obscene because it lacks literary merit when the same language, offered for the world to read, would not be considered obscene.

has explained, such "material must appeal to such a shameful or morbid interest and also be patently offensive." *United States v. Gugliemi*, 819 F.2d 451, 455 (4th Cir. 1987). In other words, "if it appeals to those 'individuals eager for a forbidden look,' it meets the prurient interest requirement of the *Miller* test"). *Ibid.*

Taken as a whole, Miller's letter does not apply to the prurient interest. Just over a page and a half long, its first paragraph discusses nothing sexual at all. Instead, it's a plea for some kind of personal intimacy from a man who, due to being incarcerated, has none. While the rest of the letter is explicitly sexual, it does not appeal to a "shameful or morbid" interest in sex. It is simply a description of sexual acts, albeit in plain, graphic terms. There is no dispute that Miller did not deploy any of the euphemism, metaphor, or allusion that a professional writer of romance or erotic fiction might. *But see Literary Review's Bad Sex in Fiction Award*, Literary Review, https://literaryreview.co.uk/bad-sex-in-fiction-award (honoring "the year's most outstandingly awful scene of sexual description in an otherwise good novel" since 1993). Instead, he says what he means, directly. The acts Miller describes are not unconventional nor do they appeal to particular fetishes. It is a description of sexual acts between two people – nothing more. That it might arouse some readers does not mean that it appeals to the prurient interest. *Powell's Books v. Kroger*, 622 F.3d 1202, 1214-1215 (9th Cir. 2010)(to " criminalize furnishing material solely intended to titillate the reader will certainly sweep up some material that

9

appeals to the prurient interest of children and minors, but it will also criminalize a broad swath of material that does not appeal to prurient interests").

For example, in its closing arguments the Government highlighted the use of the word "pussy" in the letter. JA052; JA053; JA063; JA064. It is "a word that our society and our community generally rejects as being an acceptable and moral way to describe women's genitals." JA052. Yet, a recent example of a pop culture phenomenon demonstrates that repeated use of the word "pussy" in a sexual context has acceptance in the modern world.

On August 7, 2020, rapper Cardi B released a track, featuring guest vocalist Megan Thee Stallion, called "WAP." "WAP" is an acronym for "wet-ass pussy," a phrase that the song repeats 15 times. Cardi B (with Megan Thee Stallion), *WAP* (Atlantic Records 2020).[4] In its first week of release the song was streamed *93 million* times and received more than *11 million* radio airplays to top the Billboard chart. Gary Trust, *Cardi B & Megan Thee Stallion's 'WAP' Debuts at No. 1 on Billboard Hot 100 With Record First-Week Streams*, Billboard, August 17, 2020, https://www.billboard.com/pro/cardi-bs-wap-debuts-no-1-hot-100/. The song topped multiple charts in the United States and finished the year with *732 million*

---

[4] Lyrics available at https://www.azlyrics.com/lyrics/cardi-b/wap.html (last visited December 14, 2023). It also makes multiple uses of the word "fuck" and includes a refrain that "[t]here's some whores in this house."

streams, the sixth highest overall for 2020 (in spite of being only released in August). Keith Caulfield, *Lil Baby's 'My Turn' Is MRC Data's Top Album of 2020, Roddy Ricch's 'The Box' Most-Streamed Song*, Billboard, January 7, 2021, https://www.billboard.com/pro/mrc-data-2020-recap/. *Billboard* described it as "one of the most dominant Hot 100 number ones of the last 30 years." Trevor Anderson, *Adele's 'Easy on Me' Joins Elite List of Biggest Hot 100 No. 1s of Last 30 Years*, Billboard, October 27, 2021, https://www.billboard.com/pro/olivia-rodrigo-drivers-license-dominant-hot-100-number-1-hits/. To top it off, "WAP" was named top single of the year by the British Broadcasting Corporation. Mark Savage, *The best albums and songs of 2020: Fiona Apple, Cardi B, Bob Dylan and Dua Lipa*, BBC, December 21, 2020, https://www.bbc.com/news/entertainment-arts-55336503.

*Miller* requires the application of community standards, not a national one. *Miller*, 413 U.S. at 30-34. Nonetheless, when something like "WAP" is so successful and prominent, using similar language to refer to sexual matters, as the letter in this appeal, does suggest that such language is accepted, perhaps even embraced, by the community.

For the same reasons, the language of Miller's letter does not describe in a "patently offensive way" sexual acts defined by federal law. There is no dispute that the acts described in Miller's letter would fall under the definitions of "sexual act"

11

set forth in other portions of the United States Code.[5] *See* 18 U.S.C. § 2246(2). The letter describes normal sexual acts in detail, but that does not make the descriptions patently offensive.

> **D. The collateral aspects of the letter – who wrote it and to whom it was written – do not make it obscene.**

The Government has argued, both before the jury and before this Court during its interlocutory appeal, that there are collateral aspects of the letter that bolster a finding that it is obscene, or perhaps require such a finding. One is that the letter described sexual relations between an adult and a minor. The other than the letter was sent by Miller to his sister. JA051. Neither is a basis for concluding that the letter itself is obscene.

Nowhere in the letter are the ages of the people described mentioned. The only way to conclude that the letter is about sex between an adult and a minor is that it was sent by an adult to a minor. That, of course, is an uncontested element of the statute that Miller was convicted of violating. That is what distinguishes § 1470 from 18 U.S.C. § 1461, which makes it a crime for anyone to mail an "obscene, lewd, lascivious, filthy or vile article," punishable by a sentence of up to five years in prison (§ 1470 carries a ten-year statutory maximum). Section 1470,

---

[5] Chapter 71 of Title 18, which contains offenses related to obscenity, does not have a definitional section.

then, is not the type of statute, approved by the Supreme Court, that allows for the prohibition of distribution of sexually explicit materials to minors that do not rise to the level of obscene. *Ginsberg v. State of New York*, 390 U.S. 629, 635-641 (1968). Both statutes address "obscenity" and provide different punishments depending on to whom that obscenity is sent. "Obscenity" is a term of art with regard to the First Amendment and has a consistent meaning applicable across different statutory provisions. *See United States v. Stevens*, 559 U.S. 460, 468-469 (2010)(identifying obscenity as one of the "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem")(cleaned up). Because the letter must be both obscene *and* sent to a minor for a person to be guilty of violating § 1470 the fact that it was sent to a minor cannot determine whether the letter is itself obscene.

Nor does the fact that M.M. is Miller's sister transform a letter that is otherwise not obscene into material that is obscene. In its interlocutory appeal, the Government argued that the evidence that M.M. is Miller's sister was "highly probative because it establishes two elements of the offense – that Miller knew the victim's age and that the letter is obscene." *Miller*, 61 F.4th at 430-431. While this Court explicitly agreed with the Government on the first basis of relevance, it was less clear with regard to the relevancy of that evidence to the question of whether the letter was obscene, noting that "the evidence *could assist* the jury in

determining whether the material is obscene." *Id.* at 431. In other words, the ultimate determiner of obscenity could consider the information for the weight it was worth which, in this case, is slight.[6] The language of the letter speaks for itself.

## CONCLUSION

Miller wrote a sexually explicit letter that he attempted to send to his 14-year-old sister. It was clearly a colossal mistake on his part, but it was not a crime under 18 U.S.C. § 1470. A conviction under that section can only be sustained if a person sends matter that is "obscene," as that term has been defined by the Supreme Court, to a minor. The language of the letter itself, while sexually explicit and frank, does not rise to that definition. This Court, exercising its independent obligation to determine whether letter is obscene, should conclude it is not and reverse Miller's conviction.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure, Miller hereby requests oral argument. Oral argument would provide a full and fair airing

---

[6] Miller maintains that such evidence is of such slight value that it is less probative than prejudicial and should have been excluded under Rule 403 of the Federal Rules of Evidence. *See United States v. Miller*, Appeal No. 22-4397, Dkt. No. 17 at 3-10. However, Miller recognizes that this panel is bound by this Court's earlier decision on that issue in the Government's interlocutory appeal. *Miller*, 61 F.4th at 432-433. He raises the issue here to preserve it for further review.

of these issues and provide this Court with the most assistance for resolving this case and providing guidance for courts and parties going forward

> Respectfully submitted,
>
> **DARRIN ALONZO MILLER**
>
> By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/Wesley P. Page**
Wesley P. Page
Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: wesley_page@fd.org

**s/Jonathan D. Byrne**
Jonathan D. Byrne
Assistant Federal Public Defender
Office of the Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: jonathan_byrne@fd.org

*Dated*: December 18, 2023