No. 23-4590

In The

# United States Court of Appeals
### For The Fourth Circuit

UNITED STATES OF AMERICA,

Appellee,

v.

DARRIN ALONZO MILLER,

Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia
*The Honorable Joseph R. Goodwin, United States District Judge*

Brief of Appellant the United States of America

WILLIAM S. THOMPSON
United States Attorney

JENNIFER RADA HERRALD
Assistant United States Attorney
300 Virginia Street, East, Room 4000
Charleston, West Virginia 25301
(304) 345-2200

*Attorneys for the United States of America*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................ii

STATEMENT OF JURISDICTION................................................................1

ISSUE PRESENTED.........................................................................................1

STATEMENT OF THE CASE ........................................................................1

STANDARD OF REVIEW...............................................................................4

SUMMARY OF ARGUMENT ........................................................................5

ARGUMENT

    The jury correctly determined that Miller's letter graphically describing himself engaging in sexual activity with his 14-year-old sister was obscene..........................................................................................................6

CONCLUSION ...............................................................................................19

# TABLE OF AUTHORTIES

**Cases**          **Page**

*Jenkins v. Georgia,*
     418 U.S. 153 (1974) ............................................................ 12, 13

*Miller v. California,*
     413 U.S. 15 (1973) ...........................................................6, 7, 12, 13

*Pedersen v. Schneider,*
     575 F. Supp. 3d 1339 (W.D. Wash. 2021) ........................................ 15

*Perez v. Warner, No. 3:15-CV-05530,*
     2016 WL 2894053 (W.D. Wash. Apr. 27, 2016) .............................. 15

*Rosario v. Clark Cty. Sch. Dist., No. 2:13-CV-362,*
     2013 WL 3679375 (D. Nev. July 3, 2013) ........................................ 14

*Sagehorn v. Indep. Sch. Dist. No. 728,*
     122 F. Supp. 3d 842 (D. Minn. 2015) ............................................... 15

*United States v. Deason,*
     965 F.3d 1252 (11th Cir. 2020) ........................................................ 8

*United States v. Easley,*
     927 F.2d 1442 (8th Cir. 1991) ........................................................ 13

*United States v. Guglielmi,*
     819 F.2d 451 (4th Cir. 1987) ........................................................... 7

*United States v. Guthrie,*
     720 F. App'x 199 (5th Cir. 2018) ................................................... 14

*United States v. Jenkins,*
     322 F. App'x 716 (11th Cir. 2009) ................................................. 14

*United States v. Kirkpatrick,*
     662 F. App'x 237 (5th Cir. 2016) ................................................... 14

*United States v. Miller,*
61 F.4th 426 (4th Cir. 2023) .................................................... 3, 8, 10-11

*United States v. Murphy,*
35 F.3d 143 (4th Cir. 1994) .................................................... 4-5

*United States v. Penniegraft,*
641 F.3d 566 (4th Cir. 2011) .................................................... 4

*United States v. Pryba,*
900 F.2d 748 (4th Cir. 1990) .................................................... 13

*United States v. Rogers,*
474 F. App'x 463 (7th Cir. 2012) .................................................... 14

*United States v. Salcedo,*
924 F.3d 172 (5th Cir. 2019) .................................................... 14

**Statutes**

18 U.S.C. § 1470 .................................................... passim

18 U.S.C. § 3231 .................................................... 1

28 U.S.C. § 1291 .................................................... 1

**Rules**

Federal Rule of Evidence 401 .................................................... 11

**Other**

Ben Sisario, *Cardi B's 'WAP' Proves Music's Dirty Secret: Censorship Is Good Business*, N.Y. TIMES (Oct. 27, 2020).................................................... 16

Mikael Wood, *Review: Cardi B and Megan Thee Stallion's 'WAP' is a savage, nasty, sex-positive triumph*, L.A. TIMES (Aug. 7, 2020).................................................... 17

Alyssa Rosenberg, *'WAP' is completely filthy. We could use a lot more pop culture like it.*, WASH. POST (Aug. 18, 2020).....................................................................17

## STATEMENT OF JURISDICTION

On December 14, 2021, a federal grand jury in the Southern District of West Virginia charged Darrin Alonzo Miller in a single-count indictment with transferring obscene matter to a minor under the age of 16, in violation of 18 U.S.C. § 1470, thus conferring original jurisdiction on the district court under 18 U.S.C. § 3231. JA11. Miller was convicted following a jury trial, and a judgment order was entered on September 7, 2023. JA82, JA92-100. Miller timely filed a notice of appeal on September 20, 2023. JA101. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED

In June 2020, Miller, a 38-year-old man, mailed a letter to his 14-year-old sister that described in graphic detail various sex acts he wanted to perform on her. Was this letter obscene for purposes of a conviction under 18 U.S.C. § 1470?

## STATEMENT OF THE CASE

In June 2020, defendant Darrin Alonzo Miller mailed a letter to his then 14-year-old sister, M.M. JA87-91. At the time, Miller was 38 years old and was imprisoned at a correctional center in Parkersburg, West Virginia. JA32-33. In the letter, Miller described in lurid, graphic detail the various sex acts he wanted to perform with M.M.

after his release from custody. JA87-88. Examples of such statements in the letter include:

- "[M]y mouth reaches your clit. You wrap your legs around my head, arch your back and moan my name 'Darrin'. 'Do you like the way I taste.' I respond by sliding two fingers deep inside your pussy and then letting you watch me lick your juice from them both." JA87.

- "[Y]ou grab my dick and guide it into your soaking pussy. I ask if you want me to 'fuck you hard[.]'" JA88.

- "Harder and harder I slam my rock hard dick inside you, you cum at the same time as me." JA88.

The correctional center where Miller was housed learned of the letter and referred the matter to the West Virginia State Police. JA27. Corporal Jennifer DeMeyer then began an investigation. JA27. As part of her investigation, she identified M.M. as Miller's 14-year-old sister and obtained the original June 2020 letter that M.M. had received from Miller. JA29, JA32, JA91. Cpl. DeMeyer also interviewed Miller; during that interview, Miller admitted he knew M.M. was 14 years old and that she was his sister. JA32.[1] Miller was charged in December 2021 with transferring

---

[1] M.M. was Miller's adopted sister who had come into his parents' life when she was a baby. JA32-33.

obscene matter to a minor under the age of 16, in violation of 18 U.S.C. § 1470. JA11.

On the morning of July 12, 2022 – the day before trial was to begin in the case – the district court sua sponte directed the parties to submit briefing addressing whether the United States should be permitted to introduce any evidence or testimony beyond the June 22, 2020, letter itself due to Miller's offer to stipulate to several elements of the offense. JA6. That afternoon, the district court entered an order precluding the United States from introducing any evidence or testimony beyond the letter itself, including any evidence as to Miller's relationship to M.M. JA6.

The United States filed an interlocutory appeal of the order. JA6. This Court reversed the district court's order and directed that the United States was permitted to introduce evidence that M.M. was Miller's sister to establish both that he knew her age when he sent the letter and that the letter was obscene. *United States v. Miller*, 61 F.4th 426, 431 (4th Cir. 2023). The Court specifically decided the fact that "Miller sent a sexually explicit letter *to his sister* may inform the jury as to whether the letter is obscene, *i.e.*, whether it appeals to a shameful and prurient interest in sex." *Id.* (emphasis in original). It further concluded that the "whole" of the allegedly obscene work to be considered in determining whether the letter appealed to the prurient interest "necessarily includes Miller's relationship to the recipient." *Id.* at 431-32.

Following remand, the district court held a jury trial on June 13, 2023. JA12. During the trial, the United States presented testimony from Cpl. DeMeyer and the letter sent by Miller. JA27-33, JA87-90. The district court also read two stipulations to the jury, including that the letter was drafted by Miller and sent via U.S. Mail on or about June 22, 2020, from Parkersburg to 14-year-old M.M. JA68, JA91. Approximately twelve minutes after being dismissed to deliberate, the jury returned a verdict of guilty on the single-count indictment. JA81-82.

Miller was sentenced on September 7, 2023, to 37 months in prison and a 3-year term of supervised release. JA93-94. He filed a timely notice of appeal on September 20, 2023. JA101.

## STANDARD OF REVIEW

Generally, in challenges to whether a jury had a sufficient basis for conviction, this Court will affirm a jury's verdict "if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt" when construing the evidence in the light most favorable to the government. *United States v. Penniegraft*, 641 F.3d 566, 571 (4th Cir. 2011) (emphasis in original). Where there is "substantial evidence to support the verdict," the jury's verdict must be affirmed. *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994). However, appellate courts have the power "to conduct an independent review of constitutional claims," such as whether material

4

is obscene such that it falls outside the protections of the First Amendment, "when necessary." *Id.*

## SUMMARY OF ARGUMENT

The letter Miller sent to his 14-year-old sister describing sexual activity between them was obscene, and his conviction for a violation of 18 U.S.C. § 1470 must be affirmed. Under *Miller v. California*, a letter is obscene, and thus not entitled to First Amendment protection, if it meets three criteria: 1) it appeals to the prurient interest; 2) it is patently offensive; and 3) it lacks serious literary value. Miller concedes that the letter has no serious literary value. The letter, which graphically describes the taboo and illegal act of incest between a man and his 14-year-old sister, appeals to the prurient interest because it describes shameful sexual activity that provokes disgust in the average person. The terms used to describe that sexual activity, including Miller's repeated reference to his sister's "pussy," are also patently offensive because such words are not accepted as decent and moral by the community. As Miller's letter satisfies all three *Miller* factors, the jury correctly concluded that the letter was obscene and its verdict should be affirmed.

# ARGUMENT

**The jury correctly determined that Miller's letter graphically describing himself engaging in sexual activity with his 14-year-old sister was obscene.**

The jury convicted Miller of violating 18 U.S.C. § 1470, which prohibits using the mail to transfer obscene material to a minor under the age of 16. The only dispute before the jury, and the only issue on appeal, is whether the letter was obscene. Under the three-prong test for obscenity set out by the Supreme Court, the letter is obscene, and Miller's conviction should be upheld.

In *Miller v. California*, the Supreme Court set forth the guidelines for a trier of fact to determine if material is obscene: "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable . . . law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973) (cleaned up). As Miller concedes that there is no viable claim that this private letter had any serious literary value, the only two questions relevant to this appeal are whether the work, as a whole, appealed to the prurient interest and whether the letter described sexual conduct in a patently

offensive way. As explained below, Miller's letter appealed to the prurient interest and used patently offensive language. This Court should find that it was obscene under the law and affirm Miller's conviction.

A. *Miller's letter, which describes incestuous sexual activity between an adult male and a minor female, appeals to the prurient interest.*

The first prong of the *Miller* test asks whether the "average person, applying contemporary community standards, would find the work, taken as a whole, appeals to the prurient interest." *Miller*, 413 U.S. at 24. A work appeals to the prurient interest where it would either stimulate sexual arousal or sicken and disgust the average adult. *United States v. Guglielmi*, 819 F.2d 451, 454-55 (4th Cir. 1987). Material that provokes "only normal, healthy sexual desires" does not appeal to the prurient interest but works that appeal to a "shameful or morbid interest in nudity, sex, or excretion" do. *Id.* at 455. The more offensive the work is regarding this shameful or morbid interest, the more likely it is to lead to a reaction of revulsion rather than sexual arousal in the average person. *Id.* For this reason, a jury may look to either the stimulation of the erotic or the response of disgust when determining if a work appeals to the prurient interest.

The prurient interest prong looks to the work "as a whole," but "the 'whole' necessarily includes Miller's relationship to the recipient," as this Court previously decided in the prior interlocutory appeal in this case. *Miller*, 61 F.4th at 432.[2] This is true because the purpose behind looking at a work as a whole is to "ensure . . . that the matter is placed in context so that the jury can properly determine whether the work as a whole appeals to the prurient interest." *United States v. Deason*, 965 F.3d 1252, 1262 (11th Cir. 2020). Stated differently, context is key, and the context of the letter Miller sent is inextricable from the text of the letter itself.

If, as Miller suggests, the jury is limited to only the words within the four corners of the letter to determine prurient interest, they would be unable to accurately determine if the conduct described in the letter appealed to "normal, healthy sexual desires" or shameful sexual interests that provoke disgust. Without proper context, the jury would be left with a false impression of what the letter was truly about. The letter, viewed in a vacuum, described sex between the sender (Miller) and an unknown female recipient. To assess the letter *as a whole*, however, a jury must fully understand

---

[2] Miller states that he preserves his objection to the holding in the interlocutory appeal of this case "for further review." To the extent such further review would emerge from this appeal, the United States incorporates by reference its prior briefing in *United States v. Miller*, Appeal No. 22-4397.

the letter's context: not only its words but also the identities and characteristics of the sender and the recipient and the relationship between them. Otherwise, the jury would be deprived of important facts. The jury can only accurately evaluate the letter to determine if the sexual activity described appealed to the prurient interest by knowing the true conduct described in the letter — graphic sexual intercourse between a 38-year-old man and his 14-year-old sister.

The different purposes of the first and second prongs of the *Miller* test illustrate why the prurient interest assessment may require context to judge the work as a whole. The prurient interest test focuses on the nature of the sexual conduct being described rather than the nature of the description itself. Since what matters is the *conduct* rather than the *words*, context beyond the four-corners of the letter can be critical to determining the type of sexual activity being described. The second prong, on the other hand, focuses on the words that are used to describe the sexual conduct rather than an assessment of the conduct itself. For this reason, it makes sense that the second prong does not look at the work as a whole or require context. The words speak for themselves.

Miller mischaracterizes the government's arguments to the jury regarding the relevance of M.M.'s age and relationship to Miller to the prurient interest prong. The United States never argued that the letter became obscene because it was received by a minor. The letter is not obscene *because* it was sent to a minor or *because* it was sent to Miller's sister. The letter is obscene because it described sex with M.M., the recipient of the letter, and therefore the letter described incestuous sex between an adult and a child. A letter describing incest between Miller and his 14-year-old sister appeals to the prurient interest no matter who received the letter. The characteristics of the recipient matter to the question of obscenity only to reveal the nature of the sexual activity described in the letter and allow the jury to accurately evaluate the question of prurient interest.

Contrary to Miller's assertions, this Court was perfectly clear in its ruling in the interlocutory appeal that the fact that M.M. was Miller's sister was probative to establish the obscenity of the letter. Specifically, this Court said: "The Government contends that the evidence [that M.M. was Miller's sister] is highly probative because it establishes two elements of the offense — that Miller knew the victim's age *and that the letter is obscene . . . . We agree*." *Miller*, 61 F.4th at 430-31 (emphasis added). This Court was not indicating uncertainty regarding the relevance of the evidence or

implying that the evidence carried little weight by saying that it "could assist" or "may inform" the jury in determining obscenity. *Id.* at 431. Since evidence that "has any tendency to make a fact more or less probable" is relevant under Federal Rule of Evidence 401, a holding that evidence could assist or inform the determination of an element of the offense is an unequivocal finding of relevance.

A letter that graphically describes incestuous sexual activity with a child relates to two types of sexual activity that are deemed taboo (and illegal) and unquestionably appeals to shameful sexual activity. Based upon the binding holding in the interlocutory appeal that the relationship between Miller and M.M. was relevant to the obscenity determination, this Court should find that the letter satisfies the prurient interest prong of the obscenity test and affirm the jury's verdict.

Additionally, under contemporary community standards, the letter could still be found to appeal to the prurient interest without the jury knowing that the letter described incestuous sex between an adult and a child. Specifically, the letter described Miller "sliding two fingers deep inside your pussy and then letting you watch me lick your juice from them both." JA87. While sexual intercourse or oral sex might be characterized as appealing to only normal and healthy sexual desires, the sexual act of licking vaginal secretions off one's fingers could reasonably be viewed as crossing into

what contemporary community standards would deem a "shameful" interest in sex that would provoke disgust in the average adult.[3] Accordingly, even if the outcome of the interlocutory appeal had been different, this Court should still find that the letter's description of Miller licking the "juice" from the letter recipient's "pussy" off his fingers constituted a sexual act that appeals to the prurient interest by arousing disgust in the average person.

B. *Miller's letter to M.M. used patently offensive language to describe sexual activity.*

The second part of the *Miller* obscenity test asks whether the average person, applying contemporary adult community standards, would find that the work describes sexual conduct in a patently offensive way. *See Miller*, 413 U.S. at 24. Rather than looking to the whole of a work, this test looks at the way in which the sexual conduct is depicted or described. The types of conduct subject to this analysis include "representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated." *Jenkins v. Georgia*, 418 U.S. 153, 160 (1974).

---

[3] While the United States did not make this argument to the jury because the holding in the interlocutory appeal made it unnecessary, this Court may consider it as part of its "independent review" of the obscenity of the letter.

When determining whether a description of sexual conduct is patently offensive under contemporary community standards, the question is whether the average adult in the community would find that the description deviates from what the community accepts as complying with the local standards of decency and morality or is otherwise substantially beyond customary limits of candor. JA77. This standard looks as to what is *accepted*, and not merely tolerated, by a community, for communities may tolerate or put up with many unpleasant things while not actually accepting them as meeting standards of decency. *See United States v. Pryba*, 900 F.2d 748, 759 (4th Cir. 1990); *see also United States v. Easley*, 927 F.2d 1442, 1446 (8th Cir. 1991) (rejecting the argument that patent offensiveness be measured by what the community will merely tolerate rather than what it will accept).

Whether a description of sexual conduct is patently offensive is a question of fact. *Miller*, 413 U.S. at 30. While a jury's finding as to patent offensiveness is given a great deal of deference, the First Amendment does not allow for unlimited discretion. As noted in *Jenkins*, a jury's verdict can be overturned where the offensiveness finding is "wholly at odds" with *Miller*, such as an obscenity conviction based upon a depiction of a woman's bare midriff. *Jenkins*, 418 U.S. at 161. Unlike a bare midriff, which does

not depict an ultimate sex act, masturbation, or a lewd exhibition of the genitals, "hard core" depictions of such acts can be reasonably found patently offensive.

A variety of examples in case law illustrate the landscape for what may be deemed patently offensive. Numerous courts in recent years have found that a picture of an erect penis (with or without a depiction of masturbation) can be rationally found to be patently offensive as a lewd exhibition of the genitals. *See, e.g., United States v. Salcedo*, 924 F.3d 172, 179 (5th Cir. 2019) (exercising its "independent constitutional judgment," the panel found a picture displaying an erect penis was patently offensive and affirmed a conviction under 18 U.S.C. § 1470); *United States v. Guthrie*, 720 F. App'x 199, 203 (5th Cir. 2018) (unpublished); *United States v. Kirkpatrick*, 662 F. App'x 237, 240 (5th Cir. 2016) (unpublished); *United States v. Rogers*, 474 F. App'x 463, 470 (7th Cir. 2012) (unpublished); *United States v. Jenkins*, 322 F. App'x 716, 716-17 (11th Cir. 2009) (unpublished).

Courts have also found various written descriptions of sexual conduct to be patently offensive. In 2013, a district court found that a tweet on Twitter was patently offensive and obscene; the tweet read "I hope Coach brown gets fucked in tha ass by 10 black dicks." *Rosario v. Clark Cty. Sch. Dist.*, No. 2:13-CV-362, 2013 WL 3679375, at *3-4 (D. Nev. July 3, 2013). As another court noted when referencing *Rosario*, it was

the use of the words "fucked," "ass," and "10 black dicks" that rendered the tweet patently offensive. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 855 (D. Minn. 2015).

In scenarios similar to that present in this case, courts have found that the contents of letters sent by inmates were obscene and not entitled to any First Amendment protection. In a recent case from the Western District of Washington, the court concluded that the use of graphic descriptions of sexual activity and "slang words for sexual organs" supported a conclusion that sexual conduct was described in a patently offensive way. *Pedersen v. Schneider*, 575 F. Supp. 3d 1339, 1345 (W.D. Wash. 2021), *aff'd*, No. 22-35012, 2023 WL 561312 (9th Cir. Jan. 27, 2023). That court relied upon a prior decision in that district from 2016 that found letters, which graphically described the inmate engaging in sexual activities with the letters' intended (adult) recipient, were patently offensive due to both the graphic nature of the descriptions and the use of "street slang and vernacular for sexual organs." *Perez v. Warner*, No. 3:15-CV-05530, 2016 WL 2894053, at *4 (W.D. Wash. Apr. 27, 2016).

Patent offensiveness is simply one of three factors that must be met for material to be deemed obscene. Many words or images may be patently offensive, in that they are not accepted as complying with community standards for decency, but still enjoy

First Amendment protection because one or both of the other *Miller* factors are not met. The fact that a term may be legally (and even regularly) encountered does not, therefore, mean that it is not patently offensive. As courts have noted, there is a difference between what a community may *tolerate* and what it actually *accepts*.

Miller cites in his brief to the Cardi B and Megan Thee Stallion 2020 song "WAP" — an acronym for "wet-ass pussy" — as evidence that his repeated use of "pussy" in his letter to M.M. was not patently offensive. However, the reaction to "WAP" provides a strong basis to conclude that the term "pussy" is far from accepted by society.

Miller noted that "WAP" was played over 11 million times on the radio during the first week of its release. However, the radio version of the song is edited such that the word "pussy" is never used; the same holds true for the official "WAP" video available on YouTube, which to date has been viewed over 520 million times.[4] *See* Ben Sisario, *Cardi B's 'WAP' Proves Music's Dirty Secret: Censorship Is Good Business*, N.Y. TIMES (Oct. 27, 2020), https://www.nytimes.com/2020/10/27/arts/music/clean-versions-explicit-songs.html?smid=nytcore-ios-share (noting that a "clean" version of

---

[4] Video available at https://youtu.be/hsm4poTWjMs?si=jvv85jT2muu6pYVs.

the song was necessary before it could be played on the radio and that a person who watched the video on YouTube "wouldn't have learned what its title acronym stood for – instead, just that something was 'wet and gushy'"). While "WAP" was unquestionably a popular song, many of the millions of plays of the song never once used the word "pussy" because that word was simply too offensive to include. As quoted in the New York Times, the initial reaction to "WAP" by Doc Wynter, the head of hip-hop and R&B programming for iHeartMedia, was to think, "Thank God we have systems in place that prevented that record from hitting the airwaves." *Id.*

Reviews of the song regularly described its language in terms that confirm "pussy" is a word that is considered highly inappropriate in our society. *See, e.g.,* Mikael Wood, *Review: Cardi B and Megan Thee Stallion's 'WAP' is a savage, nasty, sex-positive triumph,"* L.A. TIMES (Aug. 7, 2020), https://www.latimes.com/entertainment-arts/music/story/2020-08-07/cardi-b-megan-thee-stallion-wap-review (describing the song title as "an initialism so straightforwardly filthy that I can't unfurl it here"); Alyssa Rosenberg, *'WAP' is completely filthy. We could use a lot more pop culture like it.,* WASH. POST (Aug. 18, 2020), https://www.washingtonpost.com/opinions/2020/08/18/wap-is-completely-filthy-we-could-use-lot-more-pop-culture-like-it/ (noting the song was "not merely unquotable but impossible to describe in a family newspaper" and that

the lyrics were "among the filthiest things I've ever seen in mainstream American pop culture"). Indeed, the over-the-top vulgarity of the song and accompanying shock value likely played a significant role in the success of the track — it was a song people wanted to hear *because* an ode to "wet-ass pussy" was so outrageously offensive.

Unlike "WAP," Miller's letter had no literary or artistic value; it was nothing more than a sexually explicit letter to a child. For this reason, Miller's patently offensive use of "pussy" is not entitled to First Amendment protection even though Cardi B's patently offensive use of that term is. Sometimes language is constitutionally protected *in spite of* its patent offensiveness, but that does not render the language any less offensive. And while "pussy" may be the term used by Miller that is the most offensive in our society, he employed numerous other terms, including "fuck" and "dick," that have also been found by courts to also be patently offensive. The language used in Miller's letter to describe various sexual activity substantially deviated from what the community accepts as decent, and this Court should find that such language satisfied the second prong of the *Miller* obscenity test. As a result, a Miller's letter to M.M. meets all three *Miller* factors, and it is therefore obscene for purposes of § 1470, as correctly found by the jury.

## CONCLUSION

For the foregoing reasons, this Court should affirm Miller's conviction.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney


By:    s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 4,071 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 14-point Goudy Old Style.

s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney
Attorney for the United States

Date:     February 7, 2024

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 7, 2024, I electronically filed the foregoing "BRIEF OF APPELLEE THE UNITED STATES OF AMERICA" with the Clerk of court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Jonathan Byrne
Assistant Federal Public Defender
Federal Public Defender's Office
300 Virginia Street, East
Room 3400
Charleston, West Virginia 25301
Telephone: 304-347-3350
E-mail: jonathan_byrne@fd.org

<u>s/Jennifer Rada Herrald</u>
JENNIFER RADA HERRALD
Assistant United States Attorney
Attorney for the United States